# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAURICIO MATERON,** | : | CIVIL NO. 1:CV-11-0648 |
| Petitioner | : | (Judge Rambo) |
| v. | : | |
| **WARDEN DAVID EBBERT,** | : | |
| Respondent | : | |

## **M E M O R A N D U M**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Mauricio Materon ("Materon"), an inmate confined at the Federal Correctional Institution at Allenwood in White Deer, Pennsylvania ("FCI-Allenwood"). Mauricio alleges that his constitutional rights were violated in the context of a disciplinary proceeding. For the reasons that follow, the petition will be denied.

## I.   Facts

At all relevant times to this petition, Mauricio was confined at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI-Fort Dix").[1] On October 12, 2010, at approximately 1:20 p.m., while conducting unit rounds, Officer E. Morales

---

[1] Materon was transferred from FCI-Fort Dix to FCI-Allenwood on November 30, 2010, arriving there on December 16, 2010. (Doc. 7-1 ¶ 4.)

entered Materon's cell and observed him talking on a cellular telephone. (Doc. 7-1 at 17.) Officer Morales told Materon to hand over the phone, but Materon refused to comply, handing over only the homemade phone charger. (*Id*.) When Officer Morales called for assistance, Materon smashed the screen of the phone against the bunk bed and then handed it to the Officer. (*Id*.) Materon then sat down in a chair by the cell's window and waited for staff response. (*Id*.)

As a result of this incident, Materon was issued an incident report charging him with Possession, Manufacture, or Introduction of a Hazardous Tool, in violation of Section 108 of the Bureau of Prisons' ("BOP") disciplinary code. (*Id*.) The incident report was delivered to Materon at 6:30 p.m. on October 12, 2010. (*Id*.) Thereafter, the incident report was referred to the Unit Disciplinary Committee ("UDC") for further action. (*Id*. at 17-18.)

On October 13, 2010, the UDC held a hearing to review the incident report. (*Id*.) After reviewing the matter, the UDC referred it to the Disciplinary Hearing Officer ("DHO") for further hearing. (*Id*. at 18.) Materon was advised of the DHO hearing and advised of his rights at that hearing. (*Id*. at 20-21.) He was given copies of "Inmate Rights at Discipline Hearing" and the "Notice of Discipline Hearing Before the DHO." (*Id*.) Materon signed both forms acknowledging that he had been advised of his rights. (*Id*.)

2

On October 20, 2010, the DHO held a hearing. (*See id.* at 23-25.) Prior to the hearing, Materon was advised of his right to appear before the DHO. (*Id.* at 23.) In addition, he waived his right to a staff representative and did not request witnesses on his behalf. (*Id.*) At the hearing, when the DHO read the incident report aloud, Materon stated, "That's true." (*Id.*) In admitting the charge, he further stated that he had the phone "[a] long time. I had another phone before this one." (*Id.*)

The DHO issued his written decision on November 3, 2010, finding that Materon had committed the act as charged. (*Id.* at 23-25.) In doing so, he considered the reporting officer's incident report, Materon's statement, and photographs of the cell phone. (*Id.* at 24.) Materon was sanctioned with disallowance of 40 days of good conduct time, 30 days of disciplinary segregation, forfeiture of 540 days of non-vested good conduct time, 60 days loss of visiting and commissary privileges, and 18 months loss of telephone and TRULINCS[2] privileges. (*Id.*)

At the time of the filing of Respondent's answer to the instant petition, Materon had filed five requests for administrative remedies since entering the BOP. (*See* Doc. 7-1 at 13-15.) Four of these requests relate to the incident report or DHO hearing and decision at issue in this petition, with rejections or denials based on timeliness. (*See id.*)

---

[2] The Trust Fund Limited Inmate Computer System (TRULINCS) is a BOP program designed to provide inmates with some limited computer access, to include the capability to send and receive electronic messages, without having access to the internet. *See* http://www.bop.gov/inmate_programs/trulincs_faq.jsp#1. (Doc. 7 at 4 n.1.)

## II.  Discussion

The BOP disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23.  These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules.  The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14.  Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator.  28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing.  28 C.F.R. § 541.15.  Because Materon was charged with Possession, Manufacture, or Introduction of a Hazardous Tool, an offense in the greatest severity category, the matter was referred for a disciplinary hearing.

Greatest category offenses carry a possible sanction of loss of good conduct time credits, *inter alia*.  28 C.F.R. § 541.13.  When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner

4

receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

Further, despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing habeas claims under § 2241. *Speight v. Minor*, 245 F. App'x 213, 215 (3d Cir. 2007); *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion promotes a number of goals: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Courts, however, have excused exhaustion when it would not promote these goals. *See, e.g.*, *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998) (Roth, J., concurring) (exhaustion excused upon petitioner demonstrating futility); *Lyons v. United States*

*Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion excused when agency actions clearly and unambiguously violate statutory or constitutional rights).

In order for a federal prisoner to exhaust his administrative remedies, he must comply with the prison grievance process set forth in the Code of Federal Regulations. *See* 28 C.F.R. § 542.10-.23; *Lindsay v. Williamson*, No. 1:CV-07-0808, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id*. at § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. *Id*. at §§ 542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. *See Sharpe v. Costello*, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

In the response to the instant habeas petition, Respondent claims that the petition should be dismissed because Materon failed to complete the BOP's administrative appeals process prior to filing in this court. In the alternative, Respondent argues that the petition is without merit. Because the court concludes that

the instant petition is without merit, it need not determine whether to excuse Materon's failure to exhaust.

### A. Sufficiency of the Evidence

Materon challenges the sufficiency of the evidence used for the finding of the Code 108 violation. The DHO's decision is required to be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. *See Hill*, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is evidence in the record that supports the DHO's conclusion. *See id*.

Reviewing the evidence, as recited in the previous section, *supra*, the court finds that there was "some evidence" to support the DHO's decision. The written report of the reporting Officer, Materon's own statement made to the DHO that he did in fact possess the cell phone, and the photograph of the cell phone, confirm that the DHO acted with a sound evidentiary basis. *Hill*, 472 U.S. at 455-56. Thus, the

petition will be denied with respect to Materon's claim that there was insufficient evidence to support the DHO's decision.

### B. Notice of Charges[3]

The record demonstrates that Materon received adequate notice of the incident report from the investigating officer. (Doc. 7-1 at 17.) Under 28 C.F.R. § 541.15(a), "Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident." *Id*. Further, "[t]he Warden shall give an inmate advance written notice of the charge(s) against the inmate no less than 24 hours before the inmate's appearance before the [DHO] . . . ." 28 C.F.R. § 541.17(a). In addition, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded. *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief).

---

[3] Materon has not expressly claimed this violation of his due process rights. However, in an abundance of caution, the court will construe, in part, Materon's claim relating to whether he was charged with the proper BOP Code violation as a challenge to the notice of the charges.

The record in this case reflects that Materon received notice of the charges against him at 6:30 p.m. on October 12, 2010, within 24 hours of the incident which took place at 1:20 p.m. on that same day.  (Doc. 7-1 at 17.)  Further, the DHO hearing was held on October 20, 2010.  (*Id*. at 23.)  Materon had been notified of this hearing at the UDC hearing on October 13, 2010.  (*Id*. at 18.)  Since the record reflects that Materon was promptly delivered the incident report and notified of the charges, the court concludes that Materon was not prejudiced by a violation of BOP regulations such as the failure to notify an inmate of the charges against him.  Thus, the petition will be denied with respect to any challenge to notice of the charges.

### C.   Sanctions

Materon also challenges the severity of the sanctions imposed by the DHO.  Specifically, Materon claims that the sanctions imposed by the DHO should be modified because the offense committed (possession of a cellular phone) has been re-categorized by the BOP as a "greatest category offense," Code 108, rather than a "moderate category offense," Code 305.  (Doc. 1 at 6.)  In order to address this claim, the court will review the sanctions imposed by the DHO for the offense found, a "greatest category offense."

A Code 108 violation is noted as "Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to

9

institutional security or personal safety; e.g., hack-saw blade)." 28 C.F.R. § 541.13, Table 3. In his reasoning for the sanctions imposed in this case, the DHO stated the following:

> The action on the part of any inmate to possess, manufacture, or introduce a hazardous tool into any correctional institution threatens the safety and security, not only of the inmate involved, but that of the entire institution. In the recent past, inmates have used hazardous tools to effect escapes, and seriously injure other inmates and staff members. A cell phone falls under the classification of a hazardous tool, have been used to arrange rendevous for escapes, and has been used to arrange contraband introductions, and further allows the inmate to make contact with individuals outside the institution, possibly for illicit or illegal activities, without the knowledge of staff. In accordance with the memorandum dated December 28, 2009, submitted by Donna Zickefoose, Warden [of FCI-Fort Dix], a cell phone is considered a threat to the security and orderly running of the institution, not only of the inmate involved, but that of the entire institution.

(Doc. 7-1 at 25.)

The sanctions that may be imposed upon a finding of guilt of a "greatest category offense" include, *inter alia*, forfeiting earned statutory good conduct time or up to 100% of non-vested good conduct time, up to sixty days disciplinary segregation, and loss of privileges. 28 C.F.R. § 541.13. Upon review, Materon is not entitled to relief on this ground as the sanctions imposed upon him were within the limits prescribed in this regulation.

Further, these penalties (forfeiture of good conduct time, disciplinary segregation, and loss of privileges) plainly fall "within the expected perimeters of the

10

sentence imposed by a court of law," and do not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 485 (1995). Therefore, because the sanctions imposed in this case fall well within the regulatory scheme for such disciplinary infractions, Materon's argument is without merit.

## III. Conclusion

For the above stated reasons, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

                                                s/Sylvia H. Rambo
                                                United States District Judge

Dated: June 27, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAURICIO MATERON,** | : | **CIVIL NO. 1:CV-11-0648** |
| Petitioner | : | **(Judge Rambo)** |
| v. | : | |
| **WARDEN DAVID EBBERT,** | : | |
| Respondent | : | |

# O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

                                               s/Sylvia H. Rambo
                                              United States District Judge

Dated: June 27, 2011.